

# NUMBER 13-15-00187-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

KANDI TORRES, KEISHA COLLINS,
AND OLIVER BELL,                                                    **Appellants,**

**v.**

MICHAEL A. McCANN,                                                 **Appellee.**

---

On appeal from the 36th District Court
of Bee County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Longoria**
**Memorandum Opinion by Justice Rodriguez**

Appellee Michael A. McCann sued various employees and officials at the prison

facility where he is incarcerated concerning the rejection of his mail. McCann sued

appellants Oliver Bell, Keisha Collins, and Kandi Torres, among others.[1]   Appellants filed a motion for summary judgment, which the trial court denied.   Because the motion was based in part on the assertion of immunity, we review appellants' interlocutory appeal of the denial of summary judgment as allowed by statute.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5) (West, Westlaw through 2015 R.S.).   By four issues, appellants contend that the trial court erred in denying summary judgment on the bases of qualified immunity, Eleventh Amendment immunity, official immunity, and sovereign immunity. We affirm in part and reverse and render in part.

## I.   BACKGROUND

Appellee McCann is an inmate at the William G. McConnell Unit, a facility located in Beeville County, Texas.   The McConnell Unit is overseen by the Texas Department of Criminal Justice (TDCJ).   TDCJ is in turn governed by the Texas Board of Criminal Justice (the Board or TBCJ).   *See* TEX. GOV'T CODE ANN. § 492.001 (West, Westlaw through 2015 R.S).   Pursuant to the Board's statutory authority, it enacted a policy called the "Uniform Offender Correspondence Rules" which limits Texas inmates' right to receive certain mail—known by shorthand as "Board Policy 3.91" or "BP 3.91."   *See id.* § 492.013 (West, Westlaw through 2015 R.S).

The summary judgment evidence shows that administrators of the McConnell mailroom rejected McCann's mail nine times in the first half of 2012.   Two of the

---

[1] McCann also named as defendants "Teresa Myers, Jennifer Sellers, Jane and John Does of the McConnell Unit mailroom, Olivia Galan," "Jane and John Does of the D.R.C.," and "Jane and John Does of the Mail Systems Coordinator's Panel (M.S.C.P.)."   However, in his petition, McCann only alleged specific facts relating to appellants Bell, Collins, and Torres.   The record does not show—and no party explains— how these other defendants are connected to the case, if they are connected at all.   These other defendants are not parties to this appeal.

deliveries were rejected pursuant to the section of BP 3.91 which prohibits receipt of "sexually explicit images" through the mail. Both deliveries contained images of nude women.

Administrators rejected seven more shipments of mail which contained either unused stamps or what appeared to be legal documents bearing the names of other inmates in TDCJ facilities, such as parole applications and divorce petitions. The record contains a prison report which explained that McCann had been assisting other inmates with legal work. These inmates had been compensating McCann in various ways, such as sending him unused stamps. In rejecting the stamps and legal documents, administrators cited reasons including: "offender handling another offender's mail," "circumventing the mail via a third party," or that the shipments contained "stamps obtained through trafficking and trading." The third revised version of BP 3.91 generally barred an inmate from receiving mail from another inmate.

McCann appealed each denial to the Director's Review Committee (DRC), an administrative body with authority to hear appeals related to correspondence by inmates. In each instance, the DRC upheld the mail room's decision to reject the shipment.

McCann filed suit, naming appellants and other defendants who he contended were connected with the wrongful rejection of his mail. At the time McCann's mail was rejected, appellant Torres worked as a clerk at the McConnell Unit mailroom, and appellant Collins was a mailroom supervisor. Appellant Bell was the chairman of TBCJ.

McCann's petition alleged that by denying his mail, appellants violated his First Amendment right to receive the legally oriented mail of other inmates, the stamps, and the images of women. McCann also alleged that appellants retaliated against him for

3

using the facility's grievance system and for redressing issues in the courts. McCann alleged appellants retaliated by stealing his stamps and listing false reasons for the denial of his mail. The denial of mail was also the basis for claims that appellants committed fraud, conspiracy to commit fraud, theft, conspiracy to commit theft, and RICO violations. McCann sought court costs, declaratory judgment, injunctive relief, and any other relief allowable by law.

Appellants answered, pleading various forms of immunity and a general and special denial. Appellants then filed a motion for summary judgment on immunity and other grounds, which the trial court denied. This interlocutory appeal of the immunity issues followed.

## II. FEDERAL CLAIMS

### A. Qualified Immunity

By their first issue, appellants argue that McCann's First Amendment and retaliation claims must fail because he has not overcome their entitlement to qualified immunity. Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from civil liability insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Appellants assert that they were entitled to qualified immunity against McCann's section 1983 claims for First Amendment violations and retaliation. *See* 42 U.S.C.A. § 1983 (West, Westlaw

through P.L. 114-143).[2]   Appellants argue that the trial court erred in denying summary judgment against these claims on the basis of qualified immunity.

When a trial court denies a summary judgment motion based on an assertion of immunity by an officer or employee of the state, the movant may appeal that decision. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5); *Klein v. Hernandez*, 315 S.W.3d 1, 2– 3 (Tex. 2010).   A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.   *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016); *Leo v. Trevino*, 285 S.W.3d 470, 480 (Tex. App—Corpus Christi 2006, no pet.).   "The plaintiff therefore bears the burden of showing a genuine and material dispute as to whether the official is entitled to qualified immunity."   *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015); *see Leo*, 285 S.W.3d at 480.

Here, appellants pleaded with apparent good faith that they were entitled to qualified immunity against McCann's First Amendment and retaliation claims.   *See Procunier v. Navarette*, 434 U.S. 555, 561 (1978) (holding that prison officers and officials facing allegations of unconstitutional interference with an inmate's mail may assert qualified immunity).   Appellants moved for summary judgment on this ground.   Thus, McCann had the burden to rebut this affirmative defense for purposes of summary judgment.   *See Cass*, 814 F.3d at 728; *Leo*, 285 S.W.3d at 480.

To overcome a defendant's entitlement to qualified immunity at the summary judgment stage, courts engage in a two-prong inquiry.   *Tolan v. Cotton*, 134 S.Ct. 1861,

---

[2] We construe McCann's First Amendment and retaliation claims as being brought under section 1983.

5

1865 (2014). We ask whether the evidence, taken in the light most favorable to the nonmovant, is sufficient to create a fact issue as to whether: (1) the official's conduct violated a federal right, and (2) whether, at the time of the violation, that right was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *See Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015); *Tolan*, 134 S.Ct. at 1865–66; *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016).

Here, McCann appears to argue that under the first prong of qualified immunity analysis, the officer's rejection of mail violated his First Amendment rights generally. That is, McCann contends he had a First Amendment right to receive the legal documents of other inmates, the stamps, and the images that were rejected for their sexually explicit content. We disagree. Correctional facilities may restrict an inmate's First Amendment right to incoming correspondence if the restriction bears a valid, rational connection with a legitimate and neutral governmental objective. *Thornburgh v. Abbott*, 490 U.S. 401, 413; *see Turner v. Safley*, 482 U.S. 78, 89–90 (1987).[3] Based on this rule, the Supreme Court has upheld a general ban on inmate-to-inmate mail as rationally related to prison security. *See Turner*, 482 U.S. at 91. An inmate does not gain a greater First Amendment right to correspondence simply because the communication contains legal advice or assistance to the other inmate. *Shaw v. Murphy*, 532 U.S. 223, 228 (2001).

As we have noted in the past, a prison inmate who is not a member of the state bar may not practice law or otherwise represent another inmate. *Morris v. Flores*, No. 13-11-00675-CV, 2012 WL 3043097, at *3 (Tex. App.—Corpus Christi July 26, 2012, pet.

---

[3] This rule is qualified where there are overriding policies which dictate otherwise. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993) (describing the receipt of mail concerning the inmate's legal affairs as guaranteed by the constitutional rights to due process and to petition the government).

denied) (mem. op.) (citing *Paselk v. Rabun*, 293 S.W.3d 600, 606 (Tex. App.—Texarkana 2009, pet. denied)). Prison officials may deny such an inmate the receipt of another inmate's legal mail under the rule that one inmate may not handle another inmate's mail. *Id.* at \*1; *see also Heijnen v. Villareal*, No. 6:12-CV-00036-BL, 2013 WL 950791, at \*4 (N.D. Tex. Mar. 11, 2013) (mem. op.) (holding that an inmate does not have a constitutionally protected interest in obtaining or maintaining possession of the legal materials of other inmates). Rather, to the extent that the receipt of legal documents triggers constitutional protection, this protection accrues to the benefit of the prisoner in whose name the lawsuit is filed, not the inmate who assists in the preparation of that lawsuit. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). To wit, TDCJ's mail policy defines protected "legal correspondence" as mail sent to or from a licensed attorney or a legal aid society, not any mail concerning a legal matter, as McCann argues. McCann does not suggest, and we do not divine, any basis to attach First Amendment significance to the rejection of the stamps that were associated with his unprotected correspondence.

As to the images, the summary judgment record conclusively shows that these images run afoul of BP 3.91's prohibition on sexually explicit images. This prohibition bars an inmate from receiving any form of image "which depicts sexual behavior and is intended to cause sexual excitement or arousal by showing frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s), the genitalia or anus of either gender . . . ." Appellants argue that this policy is facially constitutional under *Guajardo v. Estelle*. 580 F.2d 748, 762 (5th Cir. 1978). McCann challenges this prohibition as unconstitutional, alleging that circumstances have changed dramatically

7

since 1978. McCann does not specify how circumstances have changed, and we decline McCann's invitation to speculate. *See Thornburgh*, 490 U.S. at 416 ("Where the regulations at issue concern the entry of materials into the prison, we agree . . . that a regulation which gives prison authorities broad discretion is appropriate."); *see also Henslee v. Lopez*, 20 F.3d 470, at *5 (5th Cir. 1994) (mem. op.) (upholding rejection of explicit materials under *Thornburgh*).

We conclude that McCann has failed to create an issue of material fact as to whether the officials' conduct—preventing McCann from receiving other inmates' correspondence, the stamps, or the explicit images—violated any general First Amendment right for McCann to receive such mail. *See Mullenix*, 136 S.Ct. at 308; *Tolan*, 134 S.Ct. at 1865–66; *Allen*, 815 F.3d at 244.

McCann next claims that appellants rejected the images, legal documents, and stamps as retaliation for filing grievances to complain of prison administrators. "Prisoners have a First Amendment right to be free from retaliation for complaining about a prison official's misconduct, and a violation of this right is actionable under 42 U.S.C. § 1983." *Inst'l Div. of Tex. Dep't of Criminal Justice v. Powell*, 318 S.W.3d 889, 892 (Tex. 2010). To establish a violation of the First Amendment right against retaliation, a prisoner must establish "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id.* (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)). As above, McCann had the burden to overcome appellants' qualified immunity by introducing evidence to create a fact issue as to whether, under the circumstances, his right against retaliation was "sufficiently clear that every reasonable official would have

8

understood that what he is doing violates that right." *See Mullenix*, 136 S.Ct. at 308; *Allen*, 815 F.3d at 244; *Trent*, 776 F.3d at 376.

Appellants correctly point out that McCann has produced no evidence that Bell or Collins were personally involved in the rejection of his mail so as to have committed a "retaliatory adverse act." *See Powell*, 318 S.W.3d at 892. Under section 1983, supervisory officials such as Bell and Collins are not liable for the actions of subordinates on a theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). As supervisors, Bell and Collins could not be held liable unless (1) they affirmatively participated in the acts that cause the constitutional deprivation; or (2) they implement unconstitutional policies that causally result in a plaintiff's injury. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Here, there is no evidence from which to conclude that Bell and Collins affirmatively participated in any contested act, and as previously noted, we decline McCann's invitation to find the mail policies involved to be unconstitutional.

There is only one piece of evidence suggesting that any appellant personally participated in rejecting McCann's mail: of the nine correspondence denial forms in the record, the last form bears a signature that appears to read "K. Collins." However, there is no evidence that Collins's rejection of mail was caused by a retaliatory animus. The causation element of a retaliation claim requires a showing that but for a retaliatory motive, the complained-of incident would not have occurred. *Wilson v. Gallardo*, 269 Fed. Appx. 367, 368 (5th Cir. 2008) (mem. op.) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). The record evidence shows that Collins rejected a shipment containing images which are undoubtedly sexually explicit within the meaning of BP 3.91.

9

The denial form shows that other materials were included in the shipment aside from the images and that McCann was allowed to "receive [the shipment's] remaining content." McCann has not introduced any evidence to suggest that any officer in Collins's position would not have done the same thing.  *See Cass*, 814 F.3d at 728; *Trent*, 776 F.3d at 376.

Indeed, the record evidence shows that other officers in Collins's position *had* previously done the same thing.  The first shipment (out of the nine that were ultimately rejected) also contained sexually explicit images.  Other employees in the McConnell mail room rejected that shipment before McCann had filed any of the grievances that appear in the record.  McCann alleges that the grievances caused the mailroom administrators to retaliate against him by rejecting his mail, yet the administrators rejected similar mail even before there was any reason to retaliate.  *See, e.g.*, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding there was no basis to infer retaliation where protected activity occurred *after* the alleged string of retaliatory acts began).  The rejections were upheld on review by the Director's Review Committee. This suggests that Collins's rejection of mail was not caused by any retaliatory animus. *See McDonald*, 132 F.3d at 231.  We conclude that McCann failed to create a fact issue on his claim for retaliation.

In summary, McCann has failed to carry his burden to create an issue of material fact as to whether the officials' conduct violated any clearly established constitutional rights with regard to his First Amendment and retaliation claims.  *See Mullenix*, 136 S.Ct. at 308; *Allen*, 815 F.3d at 244; *Trent*, 776 F.3d at 376.  McCann has therefore failed to overcome appellants' entitlement to federal qualified immunity against these claims.

*See Trent*, 776 F.3d at 376; *Leo*, 285 S.W.3d at 480. We conclude that the trial court erred in denying the appellants' motion for summary judgment against these claims on grounds of qualified immunity. We sustain appellants' first issue as to McCann's First Amendment and retaliation claims.

Appellants note that McCann's RICO claim also derives from federal statutory or constitutional rights. *See* 18 U.S.C.A. § 1961–62 (West, Westlaw through P.L. 114-143). However, appellants did not argue at the summary judgment stage that they were entitled to qualified immunity against McCann's RICO claims. *See Brown v. Nationsbank Corp.*, 188 F.3d 579, 588 (5th Cir. 1999) (addressing potential qualified immunity to RICO claim). A motion must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see* TEX. R. CIV. P. 166a. Appellants' first issue is overruled as to McCann's RICO claims.

## B. Eleventh Amendment Immunity

By their second issue, appellants contend that they are entitled to Eleventh Amendment immunity against McCann's section 1983 claims—i.e., McCann's First Amendment and retaliation claims. However, we have already sustained appellants' first issue concerning these claims and could grant no greater relief by addressing appellants' second issue. And, as above, appellants did not argue at the summary judgment stage that they were entitled to Eleventh Amendment immunity against McCann's RICO claims. *See McConnell*, 858 S.W.2d at 341. We therefore need not consider appellants' second issue. *See* TEX. R. APP. P. 47.1

## III. STATE LAW CLAIMS

Appellants contend that the trial court erred in denying summary judgment as to

McCann's state law claims. These claims include fraud, conspiracy to commit fraud, theft, and conspiracy to commit theft. Appellants primarily argue that McCann failed to state a claim under federal pleading standards. This argument is inapposite to an interlocutory appeal of a motion for summary judgment in Texas state court.[4]

Appellants next contend that they are entitled to sovereign immunity and official immunity against McCann's state law claims. We address each of these issues in turn.

## A. Official Immunity

By their third issue, appellants argue that they are entitled to official immunity against McCann's state law claims. Texas law regards official immunity as an affirmative defense that must be pleaded and proved by the party asserting it. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 128 (Tex. 2015). To establish a right to summary judgment in "such circumstances, the government official would be required to conclusively prove each element of the affirmative defense." *Leo*, 285 S.W.3d at 480 n.4 (citing *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000)); *see Kassen v. Hatley*, 887 S.W.2d 4, 8–9 (Tex. 1994). If sufficient evidence was presented such that "reasonable minds could differ about the fact determination to be made by the jury," then appellants are not entitled to judgment as a matter of law. *Transp. Ins. Co. v. Moriel*,

---

[4] In truth, the majority of the appellants' motion—including those sections which discuss McCann's First Amendment and retaliation claims—argues that McCann "failed to state a claim." In this vein, appellants argue that McCann's petition is inadequate (a) under the federal pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and (b) under the federal rules applicable to *in forma pauperis* actions filed by inmates under section 1983, through which the court may dismiss a suit if the pleadings are found "frivolous." *See* 28 U.S.C.A. § 1915(e)(2) (West, Westlaw through P.L. 114–143); *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). However, these pleading standards relate to motions to dismiss in federal court, and appellants offer no basis for applying these standards when evaluating the evidence for summary judgment purposes in Texas state court. *Cf.* TEX. R. CIV. P. 166a. We find the opposite to be true: "Federal substantive law and Texas state procedural law apply to this matter." *Leo v. Trevino*, 285 S.W.3d 470, 478 (Tex. App—Corpus Christi 2006, no pet.).

12

879 S.W.2d 10, 25 (Tex. 1994). Evidence favorable to the nonmovant will be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in favor of the nonmovant. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

In order to obtain summary judgment on the basis of official immunity, the movant must conclusively establish that the employee in question was: (1) performing discretionary duties; (2) that were within the scope of the employee's authority; and (3) the employee acted in good faith. *Telthorster v. Tennell,* 92 S.W.3d 457, 461 (Tex. 2002); *Zuniga v. Navarro & Assocs., PC*, 158 S.W.3d 663, 670 (Tex. App.—Corpus Christi 2005, pet. denied).

However, appellants have offered no evidence to show that they were acting in good faith. *See, e.g., Vela v. Rocha*, 52 S.W.3d 398, 405 (Tex. App.—Corpus Christi 2001, no pet.) ("Good faith may be established by the official's own affidavit or by expert testimony."). Rather, appellants rely solely on the reasons listed in the unauthenticated denial of correspondence forms, which list reasons which are not expressly included in BP 3.91, but are only indirectly related to BP 3.91's prohibition on inmate-to-inmate mail. Resolving all doubts in favor of McCann, *see Am. Tobacco*, 951 S.W.2d at 425, we conclude that this uncorroborated evidence, without more, was insufficient to conclusively prove that appellants acted in good faith. See *Kassen*, 887 S.W.2d at 8–9; *Moriel,* 879 S.W.2d at 25. As such, the trial court did not err in denying summary judgment on this basis. *See Kassen*, 887 S.W.2d at 8–9; *Leo*, 285 S.W.3d at 480 n.4. We overrule appellants' third issue.

13

**B.** **Sovereign Immunity**

By their fourth issue, appellants contend that they are entitled to sovereign immunity against McCann's state law claims. A government employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011).[5] The entirety of appellants' argument is as follows:

> Under the doctrine of sovereign immunity, neither the State of Texas nor its agencies are liable for the actions of its officers or employees absent constitutional or statutory provisions waiving immunity from liability. Furthermore, "if an individual is sued in his official capacity, the employee may raise any defense that would be available to his employer, including the defense of sovereign immunity." When suit is barred by governmental immunity, dismissal with prejudice for want of jurisdiction is proper. Insofar as Appellants Torres, Collins and Bell are sued in their official capacities, those claims are barred by sovereign immunity.

(Citations omitted). McCann responds by noting that if his suit is considered a suit against appellants in their official capacity, his claims are not barred by sovereign immunity because he seeks only injunctive and declaratory relief. "[W]hile governmental immunity generally bars suits for retrospective monetary relief, it does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009). Appellants did not address this argument, did not direct us to any evidence concerning this issue, and offered no further explication of their sovereign immunity argument beyond the four general sentences quoted above.

Appellants are subject to the "long-standing rule" that an issue may be waived to

---

[5] Appellants' motion also argued that, under *Franka v. Velasquez*, McCann's state law claims should be construed as tort claims that were subject to bar under the Texas Tort Claims Act. *See* 332 S.W.3d 367, 382 (Tex. 2011). However, appellants have abandoned this argument on appeal.

14

inadequate briefing. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994); *see also* TEX. R. APP. P. 38.1(i). The "law of remedies against governments and government officials is a vast and complex body of doctrine, full of technical distinctions, fictional explanations, and contested compromises." *Heinrich*, 284 S.W.3d at 374. Without more, appellants' generalized four-sentence offering is insufficient to brief this complex issue for appellate review. *See Fredonia State Bank,* 881 S.W.2d at 284. We overrule appellants' fourth issue.

## IV. CONCLUSION

We affirm the trial court's denial of summary judgment as to McCann's claims concerning theft, conspiracy to commit theft, fraud, conspiracy to commit fraud, and RICO violations. We reverse the trial court's denial of summary judgment as to McCann's First Amendment and retaliation claims and render judgment in appellants' favor on these claims.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
9th day of June, 2016.

15